

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-16-2007

# USA v. Vargas

Precedential or Non-Precedential: Precedential

Docket No. 06-1368

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Vargas" (2007). *2007 Decisions.* Paper 1541.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1541

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-1368

———

UNITED STATES OF AMERICA

v.

SANDRO ANTONIO VARGAS,

<u>Appellant</u>

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C.Criminal No. 05-cr-00265-1)
District Judge: Honorable Paul S. Diamond

———

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 16, 2007

Before: FUENTES, VAN ANTWERPEN, and SILER*,
Circuit Judges.

(Filed February 16, 2007)

———

OPINION OF THE COURT

———

VAN ANTWERPEN, Circuit Judge.

Appellant Sandro Antonio Vargas appeals his sentence of 41 months of imprisonment imposed following his pleading guilty to illegally reentering the United States after he was deported following conviction of an aggravated felony in violation of 8 U.S.C. § 1326(a), (b)(2). He claims the District Court erred in sentencing him when it (1) rejected his argument that his sentence created an "unwarranted disparity" in light of the "fast-track" programs available to defendants in some other districts, (2) did not appropriately consider § 3553(a) sentencing factors, (3) did not grant him a downward departure from the Guidelines range based upon extraordinary circumstances, and (4) calculated his sentence

———

* The Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

1

using a prior felony that was not charged in his indictment or proven to a jury beyond a reasonable doubt. Because Vargas' sentence is reasonable and the District Court acted properly in sentencing him, we will affirm.

I.

On May 5, 2005, a federal grand jury in the Eastern District of Pennsylvania indicted Vargas, charging him with being an aggravated felon who reentered the United States after being deported, a violation of 8 U.S.C. § 1326(a), (b)(2).[1]

On May 19, 2005, Vargas pled not guilty to the reentry charge and a trial date was set. A month later, however, on June 24, 2005, Vargas changed his plea and pled guilty without a plea agreement. At his plea-change hearing, Vargas

---

[1] 8 U.S.C. § 1326(a) provides, in relevant part, that "any alien who - - (1) . . . has been . . . deported . . . and thereafter (2) enters, attempts to enter, or is at any time found in, the United States . . . shall be fined under Title 18, or imprisoned not more than 2 years, or both." And, 8 U.S.C. § 1326(b) provides, in relevant part, that "[n]otwithstanding subsection (a) of this section, in the case of any alien described in such subsection . . . (2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both . . ."

requested that the District Court strike as surplusage from his indictment the § 1326(b)(2) portion of his charge, i.e., the portion charging him as an alien who was previously removed for an aggravated felony. The District Court denied this request, although it acknowledged Vargas was only being charged with a violation of § 1326(a) and that a prior felony was not an element of a § 1326(a) crime. The District Court also indicated that any § 1326(b)(2) elements, such as the existence of a prior conviction for an aggravated felony, would have to be proven at sentencing if the government was to seek an enhanced sentence. Accordingly, Vargas did not admit during his guilty plea hearing to having a previous felony conviction.

On December 1, 2005, the government filed a sentencing memorandum. The memorandum stated that Vargas, having violated 8 U.S.C. § 1326(b), faced a maximum sentence of 20 years' imprisonment. In addition, it calculated Vargas' Guidelines range as between 41 and 51 months[2] and requested that the District Court impose a sentence in this range.

On December 6, 2005, Vargas filed a sentencing memorandum in which he objected to the imposition of a 41- to 51-month sentence. Citing "extraordinary family circumstances," Vargas requested a downward departure pursuant to 18 U.S.C. § 3553(b), U.S.S.G. § 5K2.0, and

---

[2]This was based on a total adjusted offense level of 21 and a criminal history category of II.

3

*Koon v. United States*, 518 U.S. 81, 116 S.Ct. 2035 (1996).[3]
In addition, he requested a variance[4] based on the application
of the sentencing factors listed in 18 U.S.C. § 3553(a)(1) to
his unique personal situation.[5] Specifically, he claimed a

---

[3] 18 U.S.C. § 3553(b) provides for a downward
departure if "there exists an aggravating or mitigating
circumstance of a kind, or to a degree, not adequately taken into
consideration by the Sentencing Commission in formulating the
guidelines that should result in a sentence different from that
described." U.S.S.G. § 5K2.0 provides in part that "[t]he
sentencing court may depart from the applicable guideline range
if . . . there exists an aggravating or mitigating circumstance . .
. ."

[4]As we did in *United States v. Vampire Nation*, 451 F.3d
189, 195 n.2 (3d Cir. 2006), we will refer to "post-*Booker*
discretionary sentences not based on a specific Guidelines
departure provision as 'variances.'"

[5]The § 3553(a) factors, in pertinent part, are as follows:
(1) the nature and circumstances of the offense and the
history and characteristics of the defendant;
(2) the need for the sentence imposed-
(A) to reflect the seriousness of the offense, to promote
respect for the law, and to provide just punishment for
the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the
defendant; and

4

lesser sentence was in order because he was forced to leave the Dominican Republic and come to this country when his wife, who had legally come here to seek help with a medically difficult pregnancy, needed his support. Furthermore, because Vargas' newborn son had heart problems, he claimed he had to remain in the U.S. after the child's birth to care for his family.[6]

---

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for-
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;
(5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)(2) that is in effect on the date the defendant is sentenced;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . .

[6]Vargas also argued, as he does here, that a 41- to 51-month sentence would create an unwarranted disparity in violation of 18 U.S.C. § 3553(a)(6) and would violate his rights under the Fifth and Sixth Amendments.

On January 24, 2006, the District Court held a sentencing hearing. It considered his request for a § 3553(b) downward departure and determined it was not warranted under the circumstances. It also considered Vargas' request for a variance from the Guidelines, specifically noting the advisory nature of the Guidelines after the Supreme Court's decision in *United States v. Booker*.[7] After permitting Vargas' wife to testify about her difficult pregnancy and her request that Vargas come to the United States to be with her, the District Court determined he was not entitled to a variance. In support of this decision, the District Court cited the seriousness of Vargas' prior conviction for a crime of violence. Having rejected these and other arguments advanced by Vargas at the sentencing hearing, the District Court sentenced Vargas at the very bottom of the 41- to 51-month Guidelines range.

The District Court entered its judgment on January 25, 2006, and Vargas filed this timely appeal on January 30, 2006.

II.

---

[7]*Booker* was decided on January 12, 2005, approximately one year before Vargas' sentencing hearing. *Cooper* was decided on February 14, 2006, after Vargas' January 2006 sentencing hearing.

We have jurisdiction over the District Court's Order of judgment and conviction pursuant to 28 U.S.C. § 1291. We have jurisdiction to review Vargas' sentence for reasonableness pursuant to 28 U.S.C. § 3742(a). *United States v. Cooper*, 437 F.3d 324, 327 (3d Cir. 2006).

## III.

### A. *"Unwarranted Sentencing Disparity"*

Vargas first contends the District Court erred in rejecting his argument that his sentence, when considered in light of sentences of similarly situated defendants in "fast-track" districts,[8] creates an "unwarranted sentencing disparity" under 18 U.S.C. § 3553(a)(6).[9] Specifically, he

---

[8]"Fast-track" programs originated in the Southern District of California in response to an overwhelming number of illegal reentry cases. *United States v. Mejia*, 461 F.3d 158, 160 (2d Cir. 2006). These programs allow defendants who violate § 1326 to receive lower sentences in exchange for waiving certain rights, including indictment by grand jury. *Id*. Today, it appears 13 of the 94 federal districts have such programs. *Id*. at 161. Vargas contends that, had he been in one of these 13 districts, he "would have been offered a reduction of anywhere from a few offense levels to a flat sentence of 30 months." Vargas' Br. at 43.

[9]Section 3553(a)(6) provides that, in sentencing defendants, courts consider "the need to avoid unwarranted

7

claims that he faced a significantly higher advisory sentencing range than defendants in fast-track districts "solely due to the arbitrary fact of the location of his arrest." Vargas' Br. at 14. Because § 3553(a)(6) requires district courts to consider disparities and the District Court in his case did not, Vargas claims his sentence is not reasonable and that he is entitled to a remand. Because we hold the disparity between sentences in fast-track and non-fast-track districts is authorized by Congress and, hence, warranted, we reject Vargas' contention and find his sentence reasonable.

Vargas' fast-track argument has been considered by nearly every court of appeals in the United States. These courts have almost uniformly rejected arguments by non-fast-track defendants that any disparity created by these programs is unwarranted, primarily relying on Congress' express approval of fast-track programs in section 401(m) of the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act ("PROTECT Act"), Pub. L. No. 108-21, 117 Stat. 650, 675 (2003).[10] *See United States*

sentence disparities among defendants with similar records who have been found guilty of similar conduct."

[10]Section 401(m) of the PROTECT Act provides as follows: "REFORM OF EXISTING PERMISSIBLE GROUNDS OF DOWNWARD DEPARTURES.--Not later than 180 days after the enactment of this Act, the United States Sentencing Commission shall-- . . . (2) promulgate, pursuant to section 994 of title 28, United States Code--. . . (B) a policy

*v. Martinez-Trujillo*, 468 F.3d 1266, 1268 (10th Cir. 2006) (explaining "[w]e cannot say that a disparity is 'unwarranted' within the meaning of § 3553(a)(6) when the disparity was specifically authorized by Congress in the PROTECT Act"); *United States v. Mejia*, 461 F.3d 158, 163 (2d Cir. 2006) (stating "Congress expressly approved of fast-track programs without mandating them; Congress thus necessarily decided that they do not create the unwarranted sentencing disparities that it prohibited in Section 3553(a)(6)"); *United States v. Aguirre-Villa*, 460 F.3d 681, 683 (5th Cir. 2006) (explaining "Congress must have thought the disparity warranted when it authorized early disposition programs without altering § 3553(a)(6)"); *United States v. Castro*, 455 F.3d 1249, 1252 (11th Cir. 2006) (finding "[w]hen Congress directed the Sentencing Commission to allow the departure for only participating districts . . . [it] implicitly determined that the disparity was warranted"); *United States v. Hernandez-Fierros*, 453 F.3d 309, 314 (6th Cir. 2006) (explaining the programs do not create unnecessary disparities because "fast-track guidelines reductions were specifically authorized by statute due to the unique and pressing problems related to immigration in certain districts"); *United States v. Perez-Pena*, 453 F.3d 236, 243 (4th Cir. 2006) (holding that "[s]entencing disparities between defendants receiving

statement authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney. . .."

9

fast-track downward departures under the PROTECT Act and those not receiving such departures are 'warranted' as a matter of law"); *United States v. Marcial-Santiago*, 447 F.3d 715, 718 (9th Cir. 2006) (explaining "[i]n light of Congress's explicit authorization of fast-track programs in the PROTECT Act, we cannot say that the disparity between Appellants' sentences and the sentences imposed on similarly-situated defendants in fast-track districts is 'unwarranted'"); *United States v. Martinez-Martinez*, 442 F.3d 539, 542 (7th Cir. 2006) (concluding "[g]iven Congress' explicit recognition that fast-track procedures would cause discrepancies, we cannot say that a sentence is unreasonable simply because it was imposed in a district that does not employ an early disposition program"); *United States v. Sebastian*, 436 F.3d 913, 916 (8th Cir. 2006) (explaining "Congress and the President, by directing that the Sentencing Commission provide for guideline departures in certain judicial districts, concluded that the advantages stemming from fast-track programs outweigh their disadvantages, and that any disparity that results from fast-track programs is not 'unwarranted.'") (internal quotation and citation omitted); *see also United States v. Jimenez-Beltre*, 440 F.3d 514, 519 (1st Cir. 2006) (not addressing disparity issue directly, but finding "[w]hether it would even be permissible to give a lower sentence on the ground [of a fast-track disparity] is itself an open question" because such a disparity is the result of a "congressional choice made for prudential reasons") (citation omitted).

Today we follow the Second and Fourth through Eleventh Circuits and hold that a district court's refusal to

adjust a sentence to compensate for the absence of a fast-track program does not make a sentence unreasonable. In addition, we agree with the District Court when, in addressing Vargas' § 3553(a)(6) claim, it stated the following: "[W]hat are prohibited under 3553 are unwarranted sentencing disparities. And I think the other two branches of Government, the legislative and executive, have made it clear that in their view these are warranted sentencing disparities." App. at 130-31 (emphasis added). That is, we agree that any sentencing disparity authorized through an act of Congress cannot be considered "unwarranted" under § 3553(a)(6).

There are additional reasons why the District Court was correct in refusing to adjust its sentence to compensate for the absence of a fast-track program. As previously noted, § 3553(a)(6) provides that, in sentencing defendants, courts consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." This Court, in *United States v. Charles*, 467 F.3d 828, 833 n.7 (3d Cir. 2006), placed the burden on the defendant to demonstrate similarity by showing that other defendants' "circumstances exactly paralleled" his. There has been no such showing here, and a court should not consider sentences imposed on defendants in other cases in the absence of such a showing by a party.[11] Furthermore, the

----

[11]While our discussion concerns sentences imposed on defendants in other cases, we have previously spoken with regard to co-defendants in the same case. "Although § 3553

11

establishment of fast-track programs is a matter left to Congress and the Attorney General, and the review of national sentencing practices and formulation of advisory sentencing guidelines is a matter left to the Sentencing Commission. A court should not create its own fast-track program or substitute its own sentencing guidelines for those of the Sentencing Commission. *See United States v. Gunter,* 462 F.3d 237, 249 (3d Cir. 2006) (explaining that a court cannot "reject the [Guidelines'] 100:1 [crack to powder] ratio and substitute its own").

We note additionally that we review sentences solely for reasonableness. *Cooper*, 437 F.3d at 327. Accordingly, even if we were to find that Vargas had shown that fast-track programs created an unwarranted disparity with similarly situated defendants under § 3553(a)(6), "we will tolerate statutory sentencing disparities so long as a judge demonstrates that he or she viewed the Guidelines as advisory and reasonably exercised his or her discretion . . . ." *Charles*, 467 F.3d at 833 (citing *United States v. Gunter*, 462 F.3d 237, 248-49 (3d Cir. 2006)). As explained below, the District Court exercised its discretion by considering the relevant § 3553(a) factors. This exercise of discretion is further evidence that Vargas' sentence was reasonable, even in light of any disparity created by fast-track programs.

_____

does not require district courts to consider sentencing disparity among co-defendants, it also does not prohibit them from doing so . . . where co-defendants are similarly situated." *United States v. Parker*, 462 F.3d 273, 277-78 (3d Cir. 2006).

*B. Failure to Consider Section 3553(a) Factors*

Vargas next contends that the District Court erred by conflating his request for a downward departure under § 3553(b) with his request for a variance under § 3553(a). Consequently, he claims the District Court failed to appropriately consider his variance request. Because we find the District Court properly considered both of Vargas' requests, we must reject this claim.

In *Cooper*, we explained that, in the wake of *Booker*, to determine if a district court acted reasonably in imposing a sentence, we first consider whether the court exercised its discretion by considering the relevant § 3553(a) factors. *Cooper*, 437 F.3d at 329 (citation omitted). Specifically, we look to the record to see if the court gave "meaningful consideration" to the § 3553(a) factors and to any meritorious grounds properly raised by the parties. *Id*. However, we do not require the court to "discuss and make findings as to each of the § 3553(a) factors if the record makes clear the court took the factors into account in sentencing." *Id*. (citation omitted).

We next ascertain whether the factors were "reasonably applied to the circumstances of the case." *Id*. at 330. That is, we look to whether the reasons for the sentence imposed "are logical and consistent with the factors set forth in section 3553(a)." *Id*. (quoting *United States v. Williams*, 425 F.3d 478, 481 (7th Cir. 2005)). In doing this, we show great deference to the trial court, recognizing that it is in the best position to tailor a sentence to a particular defendant and

13

his offense. *Id.* Furthermore, because district court judges render sentencing decisions orally and spontaneously from the bench after the presentation of numerous arguments, we do not expect them to deliver "a perfect or complete statement of all of the surrounding law." *Id*. at 330 n.8 (citation omitted).

Vargas contends the District Court did not exercise its discretion and effectively treated the Guidelines as mandatory by exclusively analyzing his request for a lesser sentence as a downward departure under § 3553(b). As evidence of this, Vargas points to the following two statements by the District Court:

> On your 3553 sentencing guideline arguments, I've - - I thought about this a good deal. And this is a strict liability crime. And I think what the Government has argued, which is that with a strict liability crime, whether or not the defendant had a laudable or a non-laudable motivation, shouldn't be considered by me . . . I don't think the guidelines allow me to depart for that reason. To downward depart for that reason is what I'm saying.

> As for the disparities, what are prohibited under 3553 are unwarranted sentencing disparities. And I think the other two branches of Government, the legislative and the executive, have made it clear that in their view these are warranted sentencing disparities. And so for that reason, also, I don't believe this falls outside the

14

heartland[12] and I am rejecting your argument.

App. at 129-30, 130-31.

Vargas contends the first of these statements, coupled with the failure of the District Court to clearly and explicitly reconsider Vargas' family circumstances under § 3553(a) later in the hearing, demonstrates the District Court did not give "meaningful consideration" to these circumstances under § 3553(a). In addition, he contends the second statement indicates the District Court erroneously imposed on Vargas an additional requirement for a variance under § 3553(a), i.e., that he establish his circumstances as being outside those considered by the Sentencing Commission when it created the Guidelines.

The sentencing hearing transcript shows that the District Court's analysis of Vargas' downward departure and variance requests was not well organized. In part, this poor organization is the result of the Court and counsel not using language that clearly distinguishes between a downward departure and a variance. We are well aware that Vargas' sentencing took place in January 2006 and the District Court and counsel did not have the benefit of our opinion in *United*

---

[12]The term "outside the heartland" refers to a situation of a particular defendant that may warrant a downward departure under § 3553(b) because it was not contemplated by the Sentencing Commission in fashioning the Guidelines. *See Koon*, 518 U.S. at 93-96.

15

*States v. Vampire Nation*, 451 F.3d 189, 195 n.2 (3d Cir. 2006) (adopting the term "variance"). Under such circumstances, we will look at the transcript to determine if the Court was aware of the difference between a departure and what we now characterize as a variance.

One of the root causes of the hearing's lack of organization was Vargas' own attorney who, in attempting to focus the District Court's attention on the § 3553(a) sentencing factors, used the term "downward departure" and seemed to reference an example of a downward departure: "Your Honor, addressing now sentencing factors. Again, I reiterate, . . . [after *Booker*] the guidelines for reentry have been adjusted and factor in a number of things that, to me, are not strict liability. . . In fact, [the government's attorney] and I have had a case where we had a downward departure, because the person came back to save his sexually abused daughter." App. at 135. Confusing arguments like this obviously made it difficult to understand Vargas' § 3553(a) arguments and led the District Court to focus much of its analysis on his § 3553(b) downward departure request.[13]

Despite the lack of organization of the Court's

---

[13] "[C]ounsel for the parties should clearly place the sentencing grounds they are raising on the record at the time of the sentencing hearing. The court is not required to manufacture grounds for the parties, or search for grounds not clearly raised on the record in a concise and timely manner." *United States v. Dragon*, 471 F.3d 501, 505 (3d Cir. 2006).

16

discussion and the parties' mixed statements about departures and variances, the full record shows that the District Court ultimately engaged in an analysis that comports with *Cooper*. It is clear the Court meaningfully considered "the nature and circumstances of [Vargas'] offense and [his] history and characteristics." 18 U.S.C. § 3553(a)(1). It heard testimony from Vargas and his wife about the circumstances surrounding his illegal reentry and demonstrated that it understood these circumstances throughout the sentencing hearing.

We have repeatedly held that district courts are under no obligation "to routinely state by rote that they have read the *Booker* decision or that they know the sentencing guidelines are now advisory." *Cooper,* 437 F.3d at 329; *see also United States v. Dragon*, 471 F.3d 501, 505 (3d Cir. 2006); *Charles*, 467 F.3d at 831; *United States v. Jackson*, 467 F.3d 834, 841 (3d Cir. 2006); *United States v. Severino*, 454 F.3d 206, 213 (3d Cir. 2006). Nevertheless, although it was not required to do so, the District Court in this case expressly noted that the Guidelines were advisory. App. at 130-31. Furthermore, although the District Court did not use the word "variance" and did not vary its sentence from the advisory Guidelines range, it clearly demonstrated that it knew its sentence could vary from the advisory Guidelines range when it stated that "this sentence is the sentence that I would impose, independent of what the guidelines call for." App. at 140. It is also clear the District Court reasonably applied the § 3553(a) factors to the circumstances of Vargas' case. It found that Vargas' knife-point robbery conviction in August 2000 was too serious to be offset by considerations

17

for his personal circumstances. *See id.* ("I also considered the following factors important[:] . . . you have one prior adult conviction for a crime of violence. A very serious crime.") This finding is logical and consistent with the § 3553(a) factors. Accordingly, we reject Vargas' argument that the District Court violated *Booker* and *Cooper* by not appropriately considering the § 3553(a) factors when sentencing him.

## C. Downward Departure Error

Vargas also contends the District Court erred when it ruled that it lacked authority to grant his motion for a downward departure. Because we find the District Court understood its authority and exercised its discretion in ruling on this motion, we reject Vargas' contention.

Although the Supreme Court in *Booker* excised part of two statutory provisions, 18 U.S.C. §§ 3553(b)(1) and 3742(e), it left in tact the rest of § 3553(b), which provides for departures, as well as U.S.S.G. § 5K2.0, which also pertains to departures. *See Booker*, 543 U.S. at 259, 125 S.Ct. 738. Accordingly, in *Cooper*, we applied our existing case law to court decisions concerning departures. *Cooper*, 437 F.3d at 332-33. While it may be that the flexibility[14] a

_____

[14]For instance, we have held that the notice requirement of Fed. R. Crim. P. 32(h), and also certain ratcheting procedures which apply to departures, do not apply to variances. *United States v. Colon*, — F.3d —, 2007 WL 210368, at *4

18

variance affords will cause a decline in the use of traditional departures, the law still provides for departures, and we decline to find that they are obsolete or replaced. *Jackson*, 467 F.3d at 838 n.5 (citing *United States v. Mohamed*, 459 F.3d 979, 985-87 (9th Cir. 2006); *United States v. Arnaout*, 431 F.3d 994, 1003-04 (7th Cir. 2005)).

We do not have jurisdiction to review discretionary decisions by district courts to not depart downward. *Cooper*, 332 F.3d at 332 (explaining, "[w]e follow the Courts of Appeals for the First, Sixth, Eighth, Tenth, and Eleventh Circuits in declining to review, after *Booker*, a district court's decision to deny departure"). Jurisdiction arises, however, if the district court's refusal to depart downward is based on the mistaken belief that it lacks discretion to do otherwise. *See United States v. Dominguez*, 296 F.3d 192, 194-95 (3d Cir. 2002) (explaining "[o]ur review of the District Court's legal conclusion that it lacked discretion to consider a departure based on family circumstances is *de novo*").

Vargas argues this Court has jurisdiction over his matter because the District Court misapprehended its own authority and wrongfully thought it lacked discretion to depart downward. In support of this argument, Vargas cites the following statement by the District Court: "[T]his is a strict liability crime. . . . I don't think the guidelines allow me to depart for that reason." App. at 130.

---

(3d Cir. 2006); *United States v. Vampire Nation*, 451 F.3d 189, 197 (3d Cir. 2006).

19

"[W]e will not elevate form over substance." *Dragon*, 471 F.3d at 506. We will look at the substance of what the court did in the entire sentencing transcript. Although the District Court made the above isolated remark, it later effectively corrected itself[15] and demonstrated at length that it clearly understood its authority to depart during the following colloquy with defense counsel:

> Defense Counsel: In fact, [the government's attorney] and I have had a case where we had a downward departure, because the person came back to save his sexually abused daughter. So I disagree with the strict liability interpretation that we are apparently operating under today. Having said that - -
>
> Court: It's - - it is a strict liability offense. I just - - I don't think the circumstances presented here warrant a downward departure. There . . . is this safety valve in the sentencing guidelines. I just don't think you've shown that you're entitled to that downward departure - -

---

[15]Taken alone, the remark could be inconsistent with our holding in *United States v. Dominguez*, 296 F.3d 192 (3d Cir. 2002). We reiterate again that, when a court finds it has the discretionary power to depart but exercises its discretion not to, it is important to note this on the record. It is usually enough for a court to simply state it is aware of its authority to depart, but that it chooses not to (or words to that effect). *United States v. Minutoli*, 374 F.3d 236, 239 (3d Cir. 2004).

Defense Counsel: Right.

Court: - - departure. <u>I'm not saying the case couldn't come along where you might be.</u>

Defense Counsel: Right.

Court: I just don't think in this case you can. The mere fact that he apparently came into the country to be with his wife . . . is not enough for a downward departure. The case that you've just described might indeed be enough for a downward departure.

App. at 135-36 (emphasis added).

It is clear from this colloquy that the District Court understood its authority to depart downward. It explained that Vargas' family circumstances were not sufficient to "warrant" a departure. Furthermore, it cited an example of a situation in which it might be inclined to grant a departure (i.e., when an alien reenters the U.S. to save a sexually abused daughter). On this record, we find the District Court exercised discretion. Accordingly, we have no jurisdiction under *Cooper* to review its refusal to depart downward.

### D. Claims Under the Fifth and Sixth Amendments

Finally, Vargas claims his being indicted under 8 U.S.C. § 1326(a) and sentenced as an aggravated felon under 8 U.S.C. § 1326(b)(2) violates his Fifth Amendment right to be subject to a maximum punishment based solely on facts

21

charged in an indictment and his Sixth Amendment right to trial by jury. In light of the Supreme Court's still-binding decision in *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219 (1998) and our decision in *United States v. Ordaz*, 398 F.3d 236 (3d Cir. 2005), we reject this claim.

As described above, § 1326(a) makes it unlawful for an alien who has been deported to reenter the country, setting a maximum penalty of two years' imprisonment for this crime. Section 1326(b)(2) increases the authorized prison sentence for the § 1326(a) crime to 20 years if the alien has previously been convicted of an aggravated felony.[16]

*Almendarez-Torres* involved an alien who, like Vargas, had been indicted under § 1326(a) and sentenced under § 1326(b)(2). *Almendarez-Torres*, 523 U.S. at 227. The alien challenged his sentence, essentially claiming subsection (b)(2) constituted its own crime and not simply a sentencing factor under subsection (a). *Id*. Consequently, he argued he could not be sentenced to up to 20 years in prison as permitted in subsection (b)(2) because a key element of the subsection (b)(2) crime—the existence of a past aggravated felony—was not charged in his indictment. *Id*. Instead, he claimed the maximum sentence he could face was the two years set forth in subsection (a). *Id*. (The District Court had sentenced the alien to 85 months' imprisonment. *Id*.) In rejecting the alien's claim, the Supreme Court held that subsection (b)(2) set forth a sentencing factor for the

---

[16]For the text of these statutes, see *infra* note 1.

subsection (a) offense. *Id*. at 235. As a result, the fact of the alien's multiple prior convictions was not an element of the subsection (a) crime and it did not have to be charged in the alien's indictment to be factored into his sentence. *Id*.

The holding of *Almendarez-Torres* has since been questioned by the Supreme Court. *See, e.g., Apprendi v. New Jersey*, 530 U.S. 466, 489, 120 S.Ct. 2348 (2000) (explaining "it is arguable that *Almendarez-Torres* was incorrectly decided"); *Shepard v. United States*, 544 U.S. 13, 27, 125 S.Ct. 1254 (2005) (Thomas, J., concurring) (arguing "a majority of the Court now recognizes that *Almendarez-Torres* was wrongly decided"). Despite these questions, the Supreme Court has yet to overrule the case. As a consequence, it continues to bind our decisions. *See Ordaz*, 398 F.3d at 241 (explaining "[t]he holding in *Almendarez-Torres* remains binding law").

Vargas concedes that the holding in *Almendarez-Torres* is fatal to his Fifth Amendment claim (involving his indictment), and he admits raising the issue only to preserve it for further review. He maintains, however, that *Almendarez-Torres* does not address his claim under the Sixth Amendment that his prior conviction must be proven to a jury in order to be considered at sentencing. As we explained in *Ordaz*, however, *Almendarez-Torres* addressed this argument as well. *Ordaz*, 398 F.3d at 240 (explaining the "argument that the fact of a prior conviction must be found by a jury was rejected by the Supreme Court in *Almendarez-Torres*"). Accordingly, the District Court properly considered Vargas' prior felony in sentencing him and his sentence is not

constitutionally infirm.

## IV.

We have considered all other arguments advanced by the parties and conclude that no further discussion is necessary. Accordingly, the judgment of the District Court will be affirmed.

24