

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-25-2007

# USA v. Rondon-Urena

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-1997

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Rondon-Urena" (2007). *2007 Decisions.* Paper 889.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/889

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 06-1997

———

UNITED STATES OF AMERICA

v.

JOSE MANUEL RONDON-URENA,
also known as SANTIAGO FIGUEROA-FIGUEROA,
also known as MARCO VEGUILLA ANTONETTY,
also known as URENA RONDON

Jose Manuel Rondon-Urena,

Appellant

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. No. 05-cr-00390-1
District Judge: Hon. Mary A. McLaughlin

———

Submitted Under Third Circuit LAR 34.1(a)

May 11, 2007

Before: RENDELL, JORDAN and ALDISERT, <u>Circuit Judges</u>.

(Filed: June 25, 2007)

———

OPINION OF THE COURT

———

ALDISERT, Circuit Judge.

Jose Manuel Rondon-Urena appeals from a sentence imposed in the Eastern District of Pennsylvania after he pleaded guilty to illegally reentering the United States notwithstanding his prior deportation for an aggravated felony. See 8 U.S.C. §§ 1326(a) & (b)(2). He argues that his sentence was unreasonably harsh because he would have received a lesser sentence in a district with a fast-track sentencing program for illegal reentry offenses. Rondon-Urena's argument is foreclosed by the precedent of this Court, and accordingly we will affirm.

I.

Rondon-Urena was born in the Dominican Republic in 1968. He was deported from the United States on February 11, 2004, after a conviction for aggravated assault, but illegally reentered and then was arrested in Philadelphia on February 14, 2005 by Bureau of Immigration and Customs Enforcement agents. On July 14, 2005, he pleaded guilty to illegally reentering the United States after deportation for an aggravated felony in violation of 8 U.S.C. §§ 1326(a) and (b)(2). He did not reach a plea agreement with prosecutors, but before sentencing moved for a downward departure under the Sentencing Guidelines. Rondon-Urena's request for a four-level departure was based on his allegation that he would receive a lesser sentence in a district with a fast-track sentencing program for illegal reentry cases.

The District Court held a sentencing hearing on March 9, 2006. The court reduced

2

Rondon-Urena's Guidelines criminal history category from Category III to Category II based on concerns that Category III might overstate his actual criminal history, and that a violation of probation may not have been considered correctly. Judge McLaughlin rejected Rondon-Urena's request for a downward departure based on fast-track disparities, however. App. 25. Ultimately, the District Court sentenced Rondon-Urena to 36 months' incarceration, a sentence below the applicable guidelines range of 41-51 months.

II.

Understanding Rondon-Urena's argument requires an understanding of fast-track programs. Fast-tracking of immigration cases began in districts along the U.S.-Mexico border in response to massive caseloads that threatened to overwhelm U.S. Attorneys' offices. United States v. Martinez-Martinez, 442 F.3d 539, 542 (7th Cir. 2006). To better manage the flood of cases, federal prosecutors offered shorter sentences to defendants in certain immigration cases, in exchange for defendants' expeditious guilty pleas and waivers of appellate and other rights in 8 U.S.C. § 1326 cases. United States v. Morales-Chaires, 430 F.3d 1124, 1127 (10th Cir. 2005). Prosecutors have used two means to offer shorter sentences and thereby encourage defendants to plead guilty: charge-bargaining, and agreeing to recommend downward departures at sentencing. Id.

Congress formally authorized fast-track programs as part of the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003

("PROTECT Act"), Pub.L. No. 108-21, 117 Stat. 650, 675 (2003). In the PROTECT Act, Congress instructed the United States Sentencing Commission to promulgate "a policy statement authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney." § 401(m). Accordingly, the Sentencing Commission added a new section to the Sentencing Guidelines providing that "[u]pon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides." U.S.S.G. § 5K3.1.

In a 2003 memorandum, the Attorney General established guidelines for the Congressionally-authorized fast-track programs. The memo stated that the programs are to be "reserved for exceptional circumstances, such as where the resources of a district would otherwise be significantly strained by the large volume of a particular category of cases." United States v. Perez-Pena, 453 F.3d 236, 238 (4th Cir. 2006) (quoting the Attorney General's memorandum). The Attorney General laid out the criteria that would be considered in assessing whether "exceptional circumstances" are present:

> (1) the district must face an "exceptional local circumstance with respect to a specific class of cases" that warrants expediting their disposition; (2) declination of such cases in favor of state prosecution must be unavailable or unwarranted; (3) the cases must be highly repetitive and present similar fact scenarios; and (4) the cases must not

4

involve an offense that the Attorney General has designated a "crime of violence."

Id. at 239 (paraphrasing and quoting the Attorney General's memorandum). The Attorney General further stated that fast-track programs must require defendants to enter into written plea agreements and to waive rights to pretrial motions, appeal and challenges under 28 U.S.C. § 2255—except based on allegations of ineffective assistance of counsel. Id. Although the PROTECT Act itself addressed only downward departure-type fast-track programs, the guidelines provided by the Attorney General "apply to charge-bargaining fast-track programs as well as to PROTECT Act programs involving downward departures." Id.

The Attorney General's office has authorized fast-track programs for illegal reentry charges in 13 districts: Arizona; California (Central, Southern, Eastern and Northern districts); Idaho; Nebraska; New Mexico; North Dakota; Oregon; Texas (Southern and Western districts); and the Western District of Washington. See United States v. Mejia, 461 F.3d 158, 161 (2d Cir. 2006). The Eastern District of Pennsylvania, however, does not have such a program.

III.

We review the District Court's criminal sentence of Rondon-Urena for reasonableness. See United States v. Booker, 543 U.S. 220, 261 (2005). Our jurisdiction is based on 18 U.S.C. § 3742(a)(1). See United States v. Cooper, 437 F.3d 324, 328 (3d Cir. 2006). Under Cooper, there are two components to our reasonableness review. "[W]e

5

must first be satisfied the court exercised its discretion by considering the relevant factors" under 18 U.S.C. § 3553(a). Id. at 329. In assessing this, we review the record to determine whether "the trial court gave meaningful consideration to the § 3553(a) factors." Id. If we are satisfied that the court considered the relevant factors, we turn to the second component of our analysis and consider whether those factors were "reasonably applied to the circumstances of the case." Id. at 330.

Rondon-Urena apparently believes that his sentence was unreasonable because of the alleged disparity between it and the sentence he would have received in a district with a fast-track sentencing program. Rondon-Urena's challenge implicates the first part of the Cooper framework; he alleges that the District Court did not consider a relevant factor. The threshold question, then, is whether the fast-track disparity implicates any of the § 3553(a) factors. Rondon-Urena does not specify which of the § 3553(a) factors he believes should have led the District Court to consider the fast-track disparity, but the obvious candidate is § 3553(a)(6), which requires sentencing courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."[1]

The District Court determined that a disparity between Rondon-Urena's sentence

---

[1] Rondon-Urena attempts to shift the debate by paraphrasing § 3553(a)(6) as stating that a "sentencing court should consider . . . the need for uniformity in the sentence of similarly situated defendants." Appellant's Br. 7. The actual § 3553(a)(6) express not a "need for uniformity," but rather a "need to avoid unwarranted sentence disparities . . . ." The distinction is not one to be smoothed over.

6

and that which he would have received in a district with a fast-track program is not "the kind of disparity that 18 U.S.C. § 3553(a) is really looking at when it talks about sentencing disparity." App. 25. In so finding, the District Court effectively held that a disparity of the sort alleged by Rondon-Urena does not qualify as an unwarranted disparity.[2]

## IV.

In United States v. Vargas, 477 F.3d 94, 99 (3d Cir. 2007), we considered the precise argument raised by Rondon-Urena, and soundly rejected it. In that case, Sandro Vargas pleaded guilty in the Eastern District of Pennsylvania "to illegally reentering the United States after he was deported following conviction of an aggravated felony in violation of 8 U.S.C. § 1326(a), (b)(2)." Id. at 96. Like Rondon-Urena, Vargas argued "that his sentence created an 'unwarranted disparity' in light of the 'fast-track' programs available to defendants in some other districts." Id.

We rejected Vargas' argument:

> [W]e follow the Second and Fourth through Eleventh Circuits and hold that a district court's refusal to adjust a sentence to compensate for the absence of a fast-track program does not make a sentence unreasonable. In addition, we agree with the District Court when, in addressing Vargas' § 3553(a)(6) claim, it stated the following: "[W]hat are prohibited under 3553 are unwarranted sentencing disparities. And I think the

---

[2] The District Court also noted the difficulty of determining what sentence Rondon-Urena might have received in another fast-track district, but we read the sentencing transcript to show that, practical difficulty aside, the District Court determined it was not authorized to consider the fast-track disparity under § 3553(a).

7

> other two branches of Government, the legislative and executive, have made it clear that in their view these are warranted sentencing disparities." . . . That is, we agree that any sentencing disparity authorized through an act of Congress cannot be considered "unwarranted" under § 3553(a)(6).

Id. at 99-100 (citation omitted).

The facts of the case before us fit neatly within the ambit of Vargas. As we made clear in that case, Congress, together with the Sentencing Commission and the Attorney General, has made the policy determination that fast-track programs are appropriate in some districts but not in others. See id. at 100. Although district courts have great discretion to determine sentences, see Cooper, 437 F.3d at 330, it would not be reasonable for district courts to reduce sentences in non-fast-track districts to match those in districts where fast-track programs have been authorized by the legislative and executive branches. To do so would be to create fast-track programs by judicial fiat in areas where the Attorney General has not authorized them. See United States v. Perez-Chavez, 422 F. Supp. 2d 1255, 1263 (D. Utah 2005). Section 3553(a)(6) does not authorize judges to undermine Congress' will.

From Rondon-Urena's perspective, his stiffer sentence may seem like an accident of geography.[3] Although we note that Rondon-Urena appears to have been in Philadelphia by choice when he was detained—he might have chosen to be in an area with a fast-track

---

[3] Here, we give Rondon-Urena the benefit of the doubt and presume that he would have received a lighter sentence in a fast-track district.

program—we do recognize the role of fortuity here. Fortuity, however, is by no means an unauthorized entrant to the criminal justice system. While its impact may be more palpable in this case owing to the similarity of many illegal reentry offenses and the clear-cut borders of fast-track districts, an individual puts himself at the mercy of the fortuities of the criminal justice system when he commits a crime.

V.

Rondon-Urena suggests that his sentence was unreasonable because it violated 18 U.S.C. § 3553(a)'s requirement that it be "not greater than necessary." Although his argument focuses on the alleged fast-track sentencing disparity—relevant to § 3553(a)(6)—he paraphrases several other § 3553(a) factors, perhaps hoping another sentencing factor would strike us as relevant. We have considered the District Court's sentence in light of all the sentencing factors, however, and will uphold it as reasonable.

\* \* \* \* \* \*

The judgment of the District Court will be affirmed.

———