**UNITED STATES of America**

v.

**Deborah BLACK, Appellant.**

No. 07–3285.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit LAR 34.1(a) April 20, 2009.

Filed: July 16, 2009.

---

James T. Clancy, Esq., Office of United States Attorney, Harrisburg, PA, for Appellee.

Douglas P. France, Esq., Kagen, MacDonald & France, York, PA, for Appellant.

Before: SCIRICA, Chief Judge, SLOVITER and FISHER, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Chief Judge.

On October 24, 2006, Deborah Black pleaded guilty to fraud against the United States Department of Housing and Urban Development (HUD), in violation of 18 U.S.C. §§ 1010 and 2.[1] She was sentenced to serve a 12–month term of imprisonment and a 1–year term of supervised release, to pay restitution in the amount of $511,251.56 and to pay a special assessment of $100. Black appealed her sentence and we will affirm.[2]

### I.

Black was a manager at Sunset Mortgage Company office in York, Pennsylvania. She frequently worked with Earl Ginter, David Walsh, and Ronald Furth, who bought, refurbished and then resold houses in that area of Pennsylvania. Ginter, Walsh and Furth used Black to secure mortgage loans for buyers who might be able to qualify for federally

---

1. She pleaded guilty to criminal actions continuing from at least as early as March 1998, until October 5, 2006. Presentence Investigation Report (PSR) ¶ 1.

2. The District Court has jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

funded mortages through HUD. Appellee's Br. 6. Black consistently violated the requirements of the Federal Housing Administration Agency 203(b) insured mortgage program. This federally funded mortgage insurance program allows certain applicants to receive 100% of their down payment for the home purchase as a gift. The regulations of the program preclude the seller of the property from being the gift donor except in two circumstances: first, if a waiver is requested from HUD or second, if the seller provides the funds in question in addition to a processing fee to a charitable non-profit 501(c)(3) organization who then re-gift the funds to the purchaser. *See* Withdrawal of Proposed Rule on Sources of Homeowner Downpayment Pursuant to Section 203 of the National Housing Act, 66 Fed. Reg. 2851 (Jan. 12, 2001).

Over the course of eight years, Black would inform Ginter, Walsh, and Furth when a potential buyer needed a gift either to pay off debts or to make a down payment in order to secure the government-insured mortgages. PSR ¶ 5. Black would then provide the sellers with a forged "gift letter" so the sellers could provide the funds to the buyers but make it look as though the funds came from a friend or a relative as a legitimate gift in compliance with the federally funded program. *Id.* Several of these buyers defaulted on their loans, causing substantial loss to HUD in the amount of $511,251.56. PSR ¶ 6.[3]

Black raises three issues on appeal: (1) whether the sentence imposed violates the Ex Post Facto Clause of the Constitution, U.S. Const. art. 1, § 9, cl. 3, by using the 2005 United States Sentencing Guidelines (U.S.S.G.) instead of the 2000 U.S.S.G. to calculate its range; (2) whether the District Court erred in calculating the amount of loss owed by Black, affecting both the amount of restitution she must pay and also her guidelines base offense level;[4] and (3) whether the District Court erred in failing to grant a downward departure under 2005 U.S.S.G. § 5K2.0.

## II.

As a general rule, courts must conduct their initial advisory guideline calculation with the guidelines in effect at the time of sentencing, not at the time of the crime. *United States v. Wood,* 486 F.3d 781, 790 (3d Cir.2007).[5] Ex Post Facto Clause problems may arise when the guidelines in effect at sentencing are more severe than those in effect when the crime was committed: "[i]f the court determines that the use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the *ex post facto* clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed." 2005 U.S.S.G. § 1B1.11(b)(1).

▪ Black contends the 2005 U.S.S.G. contained post-offense amendments that

---

**3.** The District Court applied the guidelines in effect at the time of sentencing and adopted the loss calculation based on the sale prices at the foreclosure sales. The court also granted a downward departure because the seriousness of Black's offense was overstated with regard to the amount of loss in comparison to Black's own personal financial gain.

**4.** The amount of loss attributed to Black is critical to the determination of her initial

guideline calculation, as it will be increased incrementally with the increase in the loss attributable to her. *United States v. Feldman,* 338 F.3d 212, 215 (3d Cir.2003).

**5.** We review the District Court's interpretation of the sentencing guidelines de novo. *United States v. Langford,* 516 F.3d 205, 209 (3d Cir.2008).

required a more severe sentence than that prescribed by the 2000 U.S.S.G., creating Ex Post Facto constitutional errors.[6] Appellant's Br. 1. Application Note 2 of 2005 U.S.S.G. § 1B1.11 states that "the last date of the offense of conviction is the controlling date for *ex post facto* purposes." Black pleaded guilty to HUD fraud from at least as early as March 1998 through October 5, 2006. PSR ¶ 1. As a guilty plea is an admission the defendant "committed the crime charged against him," *North Carolina v. Alford*, 400 U.S. 25, 32, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), Black's admission of fraud through 2006 is sufficient for the District Court to apply the 2005 edition of the Guidelines. Accordingly, no ex post facto problem arises by applying the 2005 guidelines to Black's sentence.

### III.

■ Black's second issue on appeal is the amount of loss for which she is being held responsible.[7] Black contests both the amount of loss included as part of her guidelines calculation and the actual restitution award imposed by the District Court. "[L]oss under the Sentencing Guidelines is the greater of the actual loss caused by the defendant's illegal actions or the amount of loss the defendant intended

to cause." *Feldman*, 338 F.3d at 215. However, "a restitution award can only be based upon actual loss." *Id.* at 216. The Government bears the burden of establishing, by a preponderance of the evidence, the amount of the loss. *See United States v. Jimenez*, 513 F.3d 62, 86 (3d Cir.2008).

Black contends that under *Feldman*, actual loss is determined by "compar[ing] what actually happened with what would have happened" if Black had acted lawfully. 338 F.3d at 221. According to Black, the crime she committed had no effect on the amount of money HUD ultimately lost because the loans could have been made lawfully through non-profit charitable organizations and HUD would have still lost the same amount of money. She alleges that when we compare what actually happened with what could have happened lawfully, there will be a finding of zero loss.

*Feldman* was a bankruptcy fraud case where we determined that the amount of loss the defendant had to pay might not include improperly concealed assets and remanded so that the district court could determine whether the concealed assets should be properly exempted. *Id.* at 220–21.[8] *Feldman* is distinguishable. Feldman did not properly disclose his assets, yet even if he had, it might not have made

---

**6.** Black does not describe exactly what amendment created this constitutional error but simply contends that "it resulted in an adjusted offense level of twenty (20) versus an offense level of sixteen (16) under the 2000 Guidelines (or lower if Black's loss calculation was correct)." Appellant's Br. 1. The Government contends that this would have made the offense level 13 instead of 17. Appellee's Br. 11.

**7.** "We review the factual determinations underlying the application of the Sentencing Guidelines for clear error, but we have plenary review over the legal determinations." *Feldman*, 338 F.3d at 219. "[W]e exercise plenary review over whether an award of

restitution is permitted under law, but we review specific awards of restitution for abuse of discretion." *Id.* (internal quotation marks and citations omitted.). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it.... Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

**8.** On remand, the district court found the exemptions were not proper and had caused actual loss. *See United States v. Feldman*, 2004 WL 1964910 (E.D.Pa.2004).

a difference. In other words, the illegality of Feldman's actions was in question, whereas here, the illegality of Black's actions is proven. In the instant case, Black did not properly disclose who was providing the money for the buyers, as was legally required. There is no question of the illegality of her fraud and as such, *Feldman* is distinguishable.

Black also contends that the amounts obtained by HUD for the properties at the time of the initial resales were not accurate representations of their values as determined by the real estate market. As a result of these low sale prices, Black alleges the amount of loss attributed to her fraud is overstated. Black specifically points to five properties as being severely undervalued by HUD because of the significant resale value they received after they were sold by HUD. In *BFP v. Resolution Trust Corp.*, the Supreme Court held that "[m]arket value cannot be the criterion of equivalence in the foreclosure-sale context." 511 U.S. 531, 538, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). " '[F]air market value' presumes market conditions that, by definition, simply do not obtain in the context of a forced sale." *Id.* HUD sold the houses as part of foreclosure sales; therefore, Black's allegations of undervaluation with respect to the fair market value of the properties are irrelevant in this context. These properties were sold as is, without the benefit of open market conditions. The District Court neither erred in imposing the restitution amount of $511,251.56 nor in using the same number for guideline calculation purposes because the amount is an accurate representation of actual loss.

### IV.

Finally, Black contends that under U.S.S.G. § 5K2.0, the District Court should have granted a downward departure because her conduct (using the phony gift letters to allow the sellers to finance the purchases) could have been legitimate (using non-profit organizations to funnel the money from the seller to the buyer). Because there was a legal method available which might have produced the same result, Black alleges she should not be held as accountable for her unlawful conduct. Appellant's Br. 9. We do not address the merits of this contention because "[w]e do not have jurisdiction to review discretionary decisions by district courts to not depart downward." *United States v. Vargas,* 477 F.3d 94, 103 (3d Cir.2007).

### V.

For the forgoing reasons, we will affirm the judgment of conviction and sentence.