PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———

No. 10-1833
———

UNITED STATES OF AMERICA

v.

JOSE J. LOPEZ,
a/k/a
JOSE LOPEZ-JIMENEZ

Jose J. Lopez,

Appellant
———

No. 10-2415
———

UNITED STATES OF AMERICA

v.

PEDRO ESPARZA-DIAZ,
also known as JUAN DIAZ OSEGERA,
also known as JUAN ESPARZA-DIAZ,
also known as JUAN TRUJILLO,

also known as JUAN SANCHEZ

Pedro Esparza-Diaz,

Appellant

———

No. 10-2518

———

UNITED STATES OF AMERICA

v.

PEDRO MANUEL ARRELUCEA-ZAMUDIO,

Appellant

———

No. 10-2519

———

UNITED STATES OF AMERICA

v.

SILVESTRE BRITO-HERNANDEZ,

Appellant

———

2

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Nos. 3-09-cr-00623-001, 1-09-cr-00449-001,
1-08-cr-00136-001 and 1-08-cr-00711-001)
District Judges:  Honorable Garrett E. Brown,
Honorable Robert B. Kugler and Honorable Renee M. Bumb
_____

Argued April 15, 2011
Before:  FISHER, JORDAN and COWEN, *Circuit Judges*.

(Filed: June 16, 2011 )

Lisa Van Hoeck
Office of Federal Public Defender
22 South Clinton Avenue
Station Plaza #4, 4th Floor
Trenton, NJ  08609
        *Counsel for Appellant,*
        *Jose J. Lopez*

Lisa E. Lewis (Argued)
Office of Federal Public Defender
800-840 Cooper Street, Suite 350
Camden, NJ  08102
        *Counsel for Appellant,*
        *Pedro Esparza-Diaz*

Maggie F. Moy
Office of Federal Public Defender
800-840 Cooper Street, Suite 350
Camden, NJ 08102
        *Counsel for Appellants,*
        *Pedro Manuel Arrelucea-Zamudio*
        *and Silvestre Brito-Hernandez*

Jennifer H. Chin
Mark E. Coyne
Caroline A. Sadlowski (Argued)
Steven G. Sanders
Office of United States Attorney
970 Broad Street, Room 700
Newark, NJ 07102
        *Counsel for Appellee*

―――――

OPINION OF THE COURT

―――――

FISHER, *Circuit Judge*.

In these consolidated appeals, Jose Lopez, Pedro Esparza-Diaz, Pedro Arrelucea-Zamudio, and Silvestre Brito-Hernandez ("Appellants") challenge the constitutionality and reasonableness of the sentences they received after pleading guilty to illegal reentry, in violation of 8 U.S.C. § 1326(a) and

4

(b)(2).[1]  Appellants claim that their Fifth Amendment rights were violated as a result of the Department of Justice's ("DOJ") implementation of "fast-track" early disposition programs in select judicial districts.  Section 5K3.1 of the United States Sentencing Guidelines ("U.S.S.G.") permits a district court to depart not more than four levels pursuant to an early disposition program authorized by the Attorney General for the particular district.  In districts where fast-track programs are in place, qualifying defendants have the option to plead guilty immediately, in exchange for the Government's filing of a motion to depart pursuant to U.S.S.G. § 5K3.1.  None of the districts within the Third Circuit have a fast-track program.

Although Appellants acknowledge that fast-track programs are defensible in districts with a high volume of immigration cases, such as districts along the southwest border of the United States, they challenge the reasoning behind authorizing these programs in districts with a low volume of immigration cases and in non-border districts. Appellants maintain that fast-track programs have been approved in an arbitrary manner, creating a disparity among similarly situated defendants that violates their Fifth Amendment right to equal protection.  Additionally,

---

[1] By order of the Clerk on December 22, 2010, we granted the Government's motion to consolidate these appeals for purposes of disposition.  In addressing the constitutional argument, we refer to Appellants collectively.  We describe their individual arguments only insofar as necessary to highlight the distinctions in their bases for appeal.

Appellants challenge the reasonableness of their sentences. We determine that the DOJ's implementation of fast-track programs is rationally related to several legitimate governmental interests and does not violate Appellants' Fifth Amendment rights. Further, the sentences imposed were procedurally and substantively reasonable. We will affirm the judgments of sentence entered by each District Court.

## I. Background

Fast-track programs were initially established in the mid-1990s in federal judicial districts along the border between the United States and Mexico – in Texas, New Mexico, Arizona, and California. Faced with an influx of immigration cases, local United States Attorneys sought to manage their caseloads by offering shorter sentences, in the form of a motion for downward departure or some other benefit, in exchange for the defendant's agreement to plead guilty immediately and waive appellate and other rights. *See generally* Jane L. McClellan & Jon M. Sands, *Federal Sentencing Guidelines and the Policy Paradox of Early Disposition Programs: A Primer on "Fast-Track" Sentences*, 38 Ariz. St. L. J. 517 (2006).

In 2003, Congress explicitly authorized downward departures in fast-track programs when it passed the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act ("PROTECT Act"), Pub. L. No. 108-21, 117 Stat. 650 (2003). The PROTECT Act "was part of a more general effort by Congress to deal with a perceived increase in the rate of departures from the Sentencing Guidelines." *United States v. Arrelucea-Zamudio*,

6

581 F.3d 142, 145 (3d Cir. 2009).  As such, Congress directed the Sentencing Commission to "promulgate . . . a policy statement authorizing a downward departure of not more than 4 levels if the Government files a motion for such departure pursuant to an early disposition program authorized by the Attorney General and the United States Attorney[.]" PROTECT Act, § 401(m)(2)(B), 117 Stat. at 675.  In response, the Sentencing Commission created U.S.S.G. § 5K3.1, which states that, "[u]pon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides."

Following passage of the PROTECT Act, the Attorney General issued a memorandum to all federal prosecutors discussing the authorization and administration of fast-track programs.  *See* Memorandum from John Ashcroft, Att'y Gen., Dep't of Justice, to U.S. Attorneys (Sept. 22, 2003), *reprinted in* 16 Fed. Sent. R. 134 (Dec. 2003) ("Ashcroft Memo").[2]  While the Ashcroft Memo highlighted the need for

---

[2]  The Ashcroft Memo set forth the following requirements for a district to obtain a fast-track program:

(A)(1) the district confronts an exceptionally large number of a specific class of offenses within the district, and failure to handle such cases on an expedited or "fast-track" basis would significantly strain prosecutorial and judicial resources available in the district; or (2) the district confronts some other exceptional

fast-track programs in districts with a high volume of immigration cases, it also made clear that "there may be some other exceptional local circumstance, other than the high incidence of a particular type of offense, that could conceivably warrant 'fast-track' treatment." *Id.* at 135. As of December 28, 2009, the Attorney General has approved twenty-five fast-track programs in seventeen judicial districts.[3] Fourteen fast-track programs are authorized for

> local circumstance with respect to a specific class of cases that justifies expedited disposition of such cases;
> (B) declination of such cases in favor of state prosecution is either unavailable or clearly unwarranted;
> (C) the specific class of cases consists of ones that are highly repetitive and present substantially similar fact scenarios; and
> (D) the cases do not involve an offense that has been designated by the Attorney General as a "crime of violence."

16 Fed. Sent. R. at 134-35.

[3] Fast-track programs have been implemented for a variety of classes of cases, including illegal reentry, transportation or harboring of aliens, alien smuggling, drug offenses, aggravated identity theft, and identification document fraud. *See* Memorandum from David W. Ogden, Deputy Att'y Gen., Dep't of Justice, to U.S. Attorneys (Dec. 28, 2009) (Supp. App. for Appellee United States at 22-23.).

illegal reentry cases.[4]  The District of New Jersey does not have any kind of fast-track program.  Appellants' constitutional argument concerns the disparity in treatment between defendants in fast-track districts and defendants in non-fast-track districts, insofar as defendants in fast-track districts are eligible to obtain a downward departure as authorized in U.S.S.G. § 5K3.1, whereas defendants in non-fast-track districts are not afforded this opportunity.

## A.    Jose Lopez

Jose Lopez is a native and citizen of Mexico.  In 1994, he was convicted in New Jersey Superior Court of aggravated arson, and was subsequently deported to Mexico.  Thereafter, Lopez illegally reentered the United States and was arrested in New Jersey in 2009.  Lopez pled guilty to illegal reentry, in violation of 8 U.S.C. § 1326(a) and (b)(2).[5]  The Probation

---

[4] These programs are implemented in the District of Arizona; the Central, Eastern, and Northern Districts of California; the District of Idaho; the District of Nebraska; the District of New Mexico; the District of Oregon; the District of Puerto Rico; the Southern District of Texas; the District of Utah; the Eastern and Western Districts of Washington; and the District of Wyoming.

[5] 8 U.S.C. § 1326(a) provides:

(a) In general
Subject to subsection (b) of this section, any alien who - -

(1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

shall be fined under Title 18, or imprisoned not more than 2 years, or both.

8 U.S.C. § 1326(b)(2) provides:

(b) Criminal penalties for reentry of certain removed aliens notwithstanding subsection (a) of this section, in the case of any alien described in such subsection - -
(2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such title, imprisoned not more than 20 years, or both[.]

10

Office prepared a Presentence Investigation Report ("PSR") recommending a base offense level of eight, pursuant to U.S.S.G. § 2L1.2(a), and a sixteen level increase, pursuant to U.S.S.G. § 2L1.2(b)(1)(A) because Lopez was previously deported after a conviction for a felony which is a crime of violence, namely the 1994 arson. After subtracting three levels for acceptance of responsibility, the PSR recommended a total offense level of twenty-one and a criminal history category of II, yielding a Guidelines range of forty-one to fifty-one months' imprisonment.

Lopez argued that the District Court should vary from the Guidelines range because the availability of fast-track programs in some judicial districts but not others creates an unfair disparity. The District Court refused to do so, and sentenced Lopez to forty-one months' imprisonment. Lopez filed a timely notice of appeal.

## B.    Pedro Esparza-Diaz

Pedro Esparza-Diaz is a native and citizen of Mexico. In 1995, he was convicted in California Superior Court of a felony drug offense and sentenced to three years' probation and three months' imprisonment. In 1999, Esparza-Diaz was again convicted of drug possession and sentenced to three years' probation and nine months' imprisonment. His probation was subsequently revoked in 2000, and he was sentenced to sixteen months' imprisonment for the 1995 conviction and two years' imprisonment on the 1999 conviction, to be served concurrently. He was deported to Mexico in 2001. Years later, he illegally returned to the United States where he was arrested in New Jersey in 2009

11

for traffic violations.  Thereafter, Esparza-Diaz pled guilty to illegal reentry, in violation of 8 U.S.C. § 1326(a) and (b)(2).

The PSR recommended a base offense level of eight, pursuant to U.S.S.G. § 2L1.2(a), plus a sixteen-level increase pursuant to U.S.S.G. § 2L1.2(b)(1)(A) because Esparza-Diaz was previously deported after he was convicted of a drug trafficking offense for which the sentence imposed exceeded thirteen months' imprisonment.[6]  As a result, the total offense level was twenty-one, after a three-level adjustment for acceptance of responsibility.  With a criminal history category of IV, the PSR recommended a Guidelines range of fifty-seven to seventy-one months' imprisonment.

At sentencing, Esparza-Diaz argued that the District Court should vary from the Guidelines range based on the absence of a fast-track program in the District of New Jersey. The District Court declined to exercise that discretion and also refused to vary based on the time that Esparza-Diaz spent in custody awaiting indictment.  Esparza-Diaz was sentenced to sixty months' imprisonment and filed a timely notice of appeal.

---

[6] *See* U.S.S.G. § 2L1.2 cmt. n.1(B)(vii) ("The length of the sentence of imprisonment includes any term of imprisonment given upon revocation of probation, parole, or supervised release.").

12

## C. Pedro Arrelucea-Zamudio

Pedro Arrelucea-Zamudio is a native and citizen of Peru.  In 1991, he was convicted in New Jersey Superior Court of drug possession and sentenced to twelve years' imprisonment.  In 1995, Arrelucea-Zamudio was deported to Peru.  Years later, he illegally reentered the United States.  In 2006, he was convicted in New Jersey Superior Court of possession of cocaine with intent to distribute.  After serving a portion of the prison sentence, he was charged with and pled guilty to illegal reentry, in violation of 8 U.S.C. § 1326(a) and (b)(2).

The PSR recommended a base offense level of eight, in accordance with U.S.S.G. § 2L1.2(a), and a sixteen-level increase, pursuant to U.S.S.G. § 2L1.2(b)(1)(A) because Arrelucea-Zamudio was previously deported after being convicted of a drug trafficking offense for which the sentence imposed exceeded thirteen months' imprisonment.  With a three-level adjustment for acceptance of responsibility, the total offense level was twenty-one and the criminal history category was III, resulting in a Guidelines range of forty-six to fifty-seven months' imprisonment.

At sentencing, Arrelucea-Zamudio requested a variance on the grounds that the absence of a fast-track program in the District of New Jersey caused a disparity among similarly situated defendants.  The District Court rejected this argument, believing that our decision in *United States v. Vargas*, 477 F.3d 94 (3d Cir. 2007), prohibited consideration of the fast-track disparity.  The District Court imposed a sentence of forty-eight months' imprisonment.

13

On appeal, we vacated Arrelucea-Zamudio's sentence because the District Court misapprehended its authority to consider the fast-track disparity. *See Arrelucea-Zamudio*, 581 F.3d at 143 (holding that after the Supreme Court's decision in *Kimbrough v. United States*, 552 U.S. 85 (2007), a district court has discretion to consider the absence of a fast-track sentencing option and vary on that basis). On remand, Arrelucea-Zamudio argued that the sixteen-level enhancement for illegal reentry set forth at U.S.S.G. § 2L1.2(b)(1)(A) is inherently unreasonable. Additionally, he renewed his argument that the District Court should vary on the basis of the fast-track disparity. The District Court considered the arguments relative to § 2L1.2 and the fast-track disparity, but declined to vary on either basis. The District Court imposed a sentence of forty-six months' imprisonment and Arrelucea-Zamudio filed a timely notice of appeal.

**D.     Silvestre Brito-Hernandez**

Silvestre Brito-Hernandez is a native and citizen of the Dominican Republic. He entered the United States as a lawful permanent resident in 1990. In 1999, he was convicted of possession of cocaine with intent to distribute, and deported to the Dominican Republic. Brito-Hernandez illegally reentered the United States in 2003. Shortly thereafter, he was arrested, pled guilty, and was sentenced to five years' imprisonment for drug possession. While serving his state prison sentence, he was indicted and pled guilty to illegal reentry, in violation of 8 U.S.C. § 1326(a) and (b)(2).

14

The PSR recommended a base offense level of eight, as set forth in U.S.S.G. § 2L1.2(a), and a sixteen-level increase pursuant to U.S.S.G. § 2L1.2(b)(1)(A) because Brito-Hernandez was previously deported after being convicted for a felony drug trafficking offense for which the sentence imposed exceeded thirteen months' imprisonment. With a three-level adjustment for acceptance of responsibility, the total offense level was twenty-one and the criminal history category was III, generating a Guidelines range of forty-six to fifty-seven months' imprisonment.

During the sentencing hearing, Brito-Hernandez requested a variance on the basis that the sixteen-level enhancement to the offense level set forth at U.S.S.G. § 2L1.2(b)(1)(A) was unreasonable and that the fast-track system created an unfair sentencing disparity between similarly situated defendants. The District Court rejected these arguments and sentenced him to forty-six months' imprisonment.

On January 5, 2010, we summarily vacated Brito-Hernandez's sentenced, as a result of our ruling in *Arrelucea-Zamudio*, because, as in that case, the District Court did not believe it had discretion to vary based on the fast-track disparity argument. On remand, Brito-Hernandez renewed his arguments with respect to U.S.S.G. § 2L1.2 and the fast-track disparity. The District Court declined to exercise its discretion to vary, and imposed a sentence of forty-six months' imprisonment. Brito-Hernandez filed a timely notice of appeal.

15

## II. Standard of Review

While we generally review constitutional claims *de novo*, *see United States v. Gordon*, 290 F.3d 539, 546 (3d Cir. 2002), constitutional challenges not raised before the district court are subject to plain error review. *See* Fed. R. Crim. P. 52(b); *see also United States v. Olano*, 507 U.S. 725, 731 (1993). We review sentences for procedural and substantive reasonableness under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). In addition, we "review factual findings relevant to the Guidelines for clear error." *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc).[7]

---

[7] The District Court had jurisdiction under 18 U.S.C. § 3231. We have appellate jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

The government claims that Appellants lack standing to challenge the constitutionality of U.S.S.G. § 5K3.1, as implemented by the DOJ and directed by Congress in the PROTECT Act. We must resolve this question at the outset because Appellants' ability to raise this constitutional challenge implicates our jurisdiction under Article III of the Constitution. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97-98 (1998). "A party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights." *Count Court of Ulster County, N.Y. v. Allen*, 442 U.S. 140, 154-55 (1979). Appellants must demonstrate that they "have suffered an injury in fact" that is "fairly trace[ab]le to the challenged action of the defendant,"

16

## III.  Discussion

and that it is likely "that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal quotation marks omitted).

Appellants have alleged that they received sentences without the benefit of a fast-track departure, thereby subjecting them to a sentencing process that was implemented in an arbitrary manner and contrary to their Fifth Amendment rights.  This injury is concrete and actual, as Appellants have already been sentenced.  *See Chapman v. United States*, 500 U.S. 453, 465 (1991) ("[T]he court may impose, whatever punishment is authorized by statute . . . so long as the penalty is not based on an arbitrary distinction that would violate the Due Process Clause of the Fifth Amendment." (internal citations omitted)); *see also Ne. Fl. Chapter of the Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993) ("The 'injury in fact' in an equal protection case . . . is the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit.").  Second, this injury is "fairly trace[ab]le" to the DOJ's implementation of fast-track programs in some districts but not others.  *Lujan*, 504 U.S. at 560.  Third, the injury is redressable because a favorable ruling that the operation of the fast-track program is unconstitutional would essentially require a district court to depart four levels, as done in fast-track districts, thereby eliminating the alleged unfairness.  Because Appellants have standing, we proceed with our analysis of their Fifth Amendment claim.

17

**A.     Constitutionality of the DOJ's Implementation of U.S.S.G. § 5K3.1**

Appellants assert that the fast-track program "produces a 'wholly arbitrary' sentencing discrepancy and violates [their] Fifth Amendment right to be free from arbitrary sentencing practices." (Br. of Appellant Jose Lopez at 14.) Because the distinction in treatment between defendants in fast-track and non-fast-track judicial districts does not implicate a suspect class, nor burden a fundamental right, we determine – and Appellants concede (*id.* at 11) – that rational basis review is appropriate here.[8]  "If a statute neither burdens a fundamental right nor targets a suspect class, it does not violate equal protection so long as it bears a rational relationship to some legitimate end." *Doe v. Pa. Bd. of Probation & Parole*, 513 F.3d 95, 107 (3d Cir. 2008).  Under rational basis review, a classification will be upheld "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Heller v. Doe*, 509 U.S. 312, 320 (1993).  The party challenging the

---

[8] Although the Fifth Amendment by its own terms does not reference equal protection, the Supreme Court has interpreted it to include an equal protection element.  *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).  Because the Supreme Court's analysis of Fifth Amendment equal protection claims has been identical to equal protection claims under the Fourteenth Amendment, we proceed accordingly here.  *See Buckley v. Valeo*, 424 U.S. 1, 93 (1976); *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975).

18

classification bears the burden to negate "every conceivable basis which might support it[.]" *Id.* At oral argument, Appellants conceded that they did not raise this constitutional claim before the District Court. Thus, we apply plain error review. *See Olano*, 507 U.S. at 731. "Plain error exists only when (1) an error was committed (2) that was plain, and (3) that affected the defendant's substantial rights." *United States v. Lessner*, 498 F.3d 185, 192 (3d Cir. 2007).

Every court of appeals to have considered the issue has upheld the DOJ's implementation of fast-track programs on a district-by-district basis under rational basis review. *See United States v. Rodriguez*, 523 F.3d 519, 527 (5th Cir. 2008); *United States v. Lopez-Velasquez*, 526 F.3d 804, 808 (5th Cir. 2008); *United States v. Llanos-Agostadero*, 486 F.3d 1194, 1199 (11th Cir. 2007); *United States v. Andujar-Arias*, 507 F.3d 734, 749 (1st Cir. 2007), *abrogated on other grounds by United States v. Rodriguez*, 527 F.3d 221 (1st Cir. 2008); *United States v. Marcial-Santiago*, 447 F.3d 715, 719 (9th Cir. 2006); *United States v. Campos-Diaz*, 472 F.3d 1278, 1280 (11th Cir. 2006); *United States v. Melendez-Torres*, 420 F.3d 45, 53 (1st Cir. 2005), *abrogated on other grounds by United States v. Anonymous Defendant*, 629 F.3d 68 (1st Cir. 2010).

These courts of appeals have identified a number of rational bases for the difference in treatment of defendants in fast-track and non-fast-track districts. In *Marcial-Santiago*, the Ninth Circuit upheld the fast-track program against an equal protection challenge, ruling that "the government has a legitimate interest in conserving prosecutorial and judicial resources in districts with large numbers of immigration

19

cases, and fast-track programs are rationally related to that interest." 447 F.3d at 719. Similarly, the Fifth Circuit determined that "[t]he current structure of the fast-track program is rationally related to, among others, the goals of promoting judicial efficiency, preserving prosecutorial discretion, and limiting downward departures overall." *Lopez-Velasquez*, 526 F.3d at 808. The Eleventh Circuit has reached the same conclusion. *See Campos-Diaz*, 472 F.3d at 1280 ("The fast-track program is rationally related to the legitimate government interest of conserving prosecutorial and judicial resources and easing congestion in judicial districts with a high volume of immigration cases."). Decisions of the First Circuit are in accord. *See Andujar-Arias*, 507 F.3d at 749 ("[W]e find that [fast-track] programs have not been implemented in a manner that is so attenuated as to render the [Congressionally established] distinction arbitrary or irrational." (internal quotation marks omitted)); *Melendez-Torres*, 420 F.3d at 53 (noting that prosecutorial discretion and resource allocation constitute "a reasonably conceivable set of facts that could provide a rational basis for the classification" (internal quotation marks omitted)).

Appellants concede that there is a rational basis for establishing fast-track programs in judicial districts with a high volume of immigration cases. (Br. of Appellant Jose Lopez at 10.) The crux of their claim, however, targets the implementation of fast-track programs in districts with a low volume of immigration cases – namely, in the Western District of Washington and the District of Nebraska. Appellants rely on the volume of immigration-related cases per district and the number of immigration-related cases per

20

Assistant United States Attorney to argue that the DOJ's approval of fast-track programs lacks a rational basis. Specifically, Appellants point to statistics demonstrating that immigration offenses compose only 12.3% and 13.2% of the criminal docket in the District of Nebraska and the Western District of Washington, respectively. (*Id.* at 11.) Moreover, they highlight that immigration cases make up 26.6% of the criminal docket in the District of Nevada, yet that district has no fast-track program. (*Id.* at 12.) Appellants argue that the fact that the District of Nebraska and the Western District of Washington have fast-track programs, while no such program is in place in the District of Nevada, demonstrates that the DOJ has implemented fast-track programs in an unconstitutional manner. We are not persuaded.

The Ashcroft Memo makes clear that the presence of a high volume of immigration cases is not the only reason to authorize a fast-track program. Rather, fast-track programs may be sanctioned when "the district confronts some other exceptional local circumstance with respect to a specific class of cases that justifies expedited disposition of such cases." 16 Fed. Sent. R. at 134. Even where a district does not confront a high volume of immigration cases, the Ashcroft Memo states that this "does not foreclose the possibility that there may be some other exceptional local circumstances, other than the high incidence of a particular type of offense, that could conceivably warrant 'fast-track' treatment." *Id.* To that end, we determine that the endorsement of fast-track programs in districts with a low volume of immigration cases is rationally related to, among other things, the purposes of efficiently prosecuting illegal reentry cases and dealing with

demands regarding allocation of prosecutorial resources. If a particular district is ill-equipped to handle illegal reentry prosecutions due to, for example, an influx of cases or a recurring type of case, a fast-track program will enable that district to manage its caseload efficiently. The fact that some districts with a high volume of immigration cases do not have fast-track programs does not mean that the program is operated in an unconstitutional manner. Those districts, such as the District of Nevada, may be better prepared to prosecute immigration cases and have no need for such a program. The DOJ's implementation of the fast-track program is rationally related to the objective of managing shortages in prosecutorial resources and enforcing the immigration laws, not only dealing with the challenge of a large volume of immigration cases.

The First Circuit reached the same conclusion in *Andujar-Arias*, 507 F.3d at 744-45. There, the defendant argued that the existence of fast-track programs in districts such as the Western District of Washington and the District of Nebraska where immigration cases account for a low percentage of the caseload demonstrated that the programs were implemented in an unconstitutional manner. The court refused to strike down the program based on statistics regarding the number of cases alone. Notably, the court reasoned that "[w]hen Congress authorized the Attorney General to approve fast-track programs, it did not restrict the criteria for such programs to the mere proportion of each district's caseload" but instead "allowed the Attorney General to evaluate such factors as the number and type of immigration cases encountered by each district and the

22

quality and variety of resources each district could marshal in response." *Id.* at 744. We agree. Evaluating only the percentage of immigration cases "obscures the fact that different types of cases may require different types and amounts of resources." *Id.* This is because "judgments regarding resource allocation can rarely be reduced to a single variable or calculation." *Id.* at 745. Appellants' statistical references do not establish that fast-track programs are administered unlawfully.

Appellants seize on language from our decision in *Arrelucea-Zamudio* where we stated that "it does not appear to be clear to the [Sentencing] Commission (based on its limited statistical analysis), nor is it evident to us, why some districts have fast-track programs while others do not." 581 F.3d at 154. Thus, Appellants claim that "[a]n unidentifiable basis for a sentencing discrepancy is not a rational one." (Br. of Appellant Pedro Arrelucea-Zamudio at 24.) Appellant's reliance on *Arrelucea-Zamudio* is misplaced.[9] In *Arrelucea-Zamudio*, we held that a district court may consider the fast-

---

[9] Further, this argument inappropriately attempts to place the burden of proof on the government. *See Heller v Doe*, 509 U.S. 312, 320 (1993) ("[T]he burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it" (internal quotation marks and citation omitted).); *see also United States v. Ruiz-Chairz*, 493 F.3d 1089, 1092 (9th Cir. 2007) ("[T]he government shoulders no burden to proffer a basis for a distinction that Congress and the Sentencing Commission have made.").

track disparity and exercise its discretion to vary from the Guidelines range when sentencing a defendant for illegal reentry. 581 F.3d at 143. The case did not involve a constitutional challenge to the fast-track program, nor did we hold that the DOJ's implementation of U.S.S.G. § 5K3.1 lacked a rational basis. Even if fast-track programs are not authorized in an easily identifiable manner, it does not render the DOJ's operation of such programs unconstitutional. To the contrary, our inquiry is limited to evaluating whether "there is any *conceivable* state of facts that could provide a rational basis for the classification." *Heller*, 509 U.S. at 320 (emphasis added). As we have already noted, the DOJ's authorization of fast-track programs is rationally related to the permissible goals of efficiently enforcing the immigration laws and allocating prosecutorial resources where they are most needed.

There are several justifiable reasons for allowing the United States Attorney General and the United States Attorney for each judicial district to evaluate the distribution of prosecutorial resources in enforcing the immigration laws. Appellants fall far short of their burden to demonstrate that there is no conceivable basis for the DOJ's endorsement of fast-track programs in some districts but not others. Having identified no constitutional error, Appellants cannot demonstrate that the District Courts committed plain error by not striking down Congress's directive regarding implementation of fast-track programs by the DOJ. *See United States v. Castro*, 455 F.3d 1249, 1253 (11th Cir. 2006) (noting that defendant could not establish plain error when no court "has held that the limited availability of the fast-track

24

departure violates equal protection"). Thus, Appellants' Fifth Amendment argument lacks merit.

## B. Reasonableness of Sentences

Having determined that Appellants' Fifth Amendment challenge to the DOJ's implementation of U.S.S.G. § 5K3.1 provides no basis for relief, we turn to Appellants' arguments regarding the reasonableness of the sentences they received. Our framework for reviewing sentences is well-established. "First, we determine whether the sentencing court correctly calculated the Guidelines range." *United States v. Fisher*, 502 F.3d 293, 308 (3d Cir. 2007). "Next, we determine whether the trial court considered the § 3553(a) factors and any sentencing grounds properly raised by the parties which have recognized legal merit and factual support in the record." *Id.* (internal quotation marks omitted). Then, "we ascertain whether those factors were reasonably applied to the circumstances of the case." *Id.* (internal quotation marks omitted). After confirming that the district court followed the proper procedural requirements, "we review the resulting sentence to ensure that it is substantively reasonable." *Id.* We will review each Appellant's sentence individually.

### 1. Jose Lopez

Lopez argues that the District Court committed procedural error by refusing to give meaningful consideration to the fast-track disparity. (Br. of Appellant Jose Lopez at 14-15.) Specifically, Lopez insists that the District Court "simply declined to accept the validity of the fast-track disparity." (*Id.* at 17.) We disagree.

25

In *Arrelucea-Zamudio,* we held that "a sentencing judge has the discretion to consider a variance under the totality of the § 3553(a) factors (rather than one factor in isolation) on the basis of a defendant's fast-track argument, and that such a variance would be reasonable in an appropriate case." 581 F.3d at 149. "In sentencing a defendant for illegal reentry in a non-fast-track district . . . a sentencing court 'must make an individualized assessment based on the facts presented,' and 'judge their import under § 3553(a).'" *Id.* at 166 (quoting *Gall*, 552 U.S. at 50-51). We did not conclude that a district court *must* consider the fast-track disparity and vary on that basis. Rather, we determined that if a district court chooses to exercise its discretion because it has a policy disagreement with U.S.S.G. § 5K3.1, then it must evaluate the fast-track disparity with regard to the totality of the § 3553(a) factors to ensure that the resulting sentence will be reasonable. *See id.* In fact, we emphasized that our previous holding in *United States v. Vargas*, 477 F.3d 94, 99 (3d Cir. 2007), "that it is not an abuse of a sentencing judge's discretion to decline to vary on the basis of the fast-track disparity – remains viable after *Kimbrough*." *Id.* at 148. The procedural error in *Arrelucea-Zamudio* was the district court's mistaken belief that it did not have discretion to vary based on the fast-track disparity. *See id.* at 149. That is not what occurred here.

The District Court correctly calculated a Guidelines range of forty-one to fifty-one months' imprisonment. At sentencing, the District Court noted:

> [L]ooking at the arguments that are made by the
> defense which I referred to before, starting out

26

with the fact that some jurisdictions have a fast-track program and that New Jersey does not, I do not think that is an appropriate basis to exercise my discretion under 3553[a] or otherwise. Indeed, to do that would be to take what seems to be a rather unique program and make it nationwide. We have an obligation really to avoid unwarranted disparities. I think we'd be creating unwarranted disparities . . . . I do not think that the variance on the basis of a lack of a fast-track program would be an appropriate exercise of discretion here[.]

(App. of Appellant Jose Lopez at 38-39.) The District Court acknowledged that it could vary based on the fast-track disparity when it stated that it would not "exercise [its] discretion," (*id.*), on that basis. In doing so, it explained why it believed a variance was inappropriate, even though it was permitted, thereby meaningfully considering Lopez's request. Lopez's argument on this point lacks merit.

Next, Lopez asserts that his sentence is procedurally and substantively unreasonable because the District Court ignored the need to "impose a sentence sufficient, but not

27

greater than necessary," as stated in 18 U.S.C. § 3553(a).[10] The record belies this contention. The District Court specifically noted that "the sentence at the bottom of the advisory guideline range is reasonable and no greater than necessary to comply with the statutory purpose. We have a serious offense that needs to be dealt with seriously." (*Id.* at 41.) The District Court explicitly found that a Guidelines range sentence was necessary, taking into consideration Lopez's background. We cannot say that "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *United States v. Tomko*, 562 F.3d 558, 568 (3d Cir. 2009) (en banc). The District Court reasonably concluded that a sufficient sentence in a fast-track district

---

[10] In challenging the substantive reasonableness of their sentences, each Appellant argues that his sentence is unreasonable because the implementation of fast-track programs in various judicial districts violates his Fifth Amendment right to be free from arbitrary sentencing practices. This argument recapitulates Appellants' unsuccessful constitutional argument, and we do not address it further.

would not be sufficient in Lopez's case.[11]   Thus, we determine that a sentence of forty-one months' imprisonment is reasonable.

### 2.     Pedro Esparza-Diaz

Esparza-Diaz asserts that the District Court committed procedural error in relying on clearly erroneous factual findings in denying his request for a variance to account for the time he spent in custody awaiting indictment for illegal reentry.   "A district court commits significant procedural error – and thus abuses its discretion – when . . . it bases its

---

[11] To the extent Lopez argues that because "the district court imposed a Guidelines sentence in a case indistinguishable from the thousands across the country which typically qualify for fast-track departures[,] . . . this greater sentence . . . violat[es] parsimony" (Br. of Appellant Jose Lopez at 21), we note that we specifically recognized in *Arrelucea-Zamudio* that "a district court is under no obligation to impose a sentence below the applicable Guidelines range solely on the basis of the [fast-track disparity]."   581 F.3d at 148 (internal quotation marks and citation omitted); *see also United States v. Llanos-Agostadero*, 486 F.3d 1194, 1199 (11th Cir. 2007) ("[W]e cannot say that the sentences received by defendants in districts without fast-track programs are 'greater than necessary' to achieve the purposes of § 3553(a)(2) *solely because* similarly-situated defendants in districts *with* fast-track programs are eligible to receive lesser sentences." (emphasis in original)).

calculation of the advisory Guidelines range on a clearly erroneous finding of fact[.]" *United States v. Starnes*, 583 F.3d 196, 215 (3d Cir. 2009). In that regard, "[a] [factual] finding is clearly erroneous when although there is evidence to support it, the reviewing body on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks omitted).

Pursuant to 18 U.S.C. § 3585(b), "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences[.]" The definition of "official detention" is provided in Bureau of Prisons Program Statement 5880.28:

> Official detention does not include time spent in the custody of the U.S. Immigration and Naturalization Service (INS) under the provisions of 8 U.S.C. § 1252 pending a final determination of deportability. An inmate being held by INS being a civil deportation proceeding is not being held in "official detention" pending criminal charges.

BOP P.S. 5880.28, 1-15A. Esparza-Diaz was arrested for traffic violations on February 12, 2009. An agent from Immigration and Customs Enforcement ("ICE") interviewed him on February 20, 2009. On February 24, 2009, the ICE Agent returned for another interview with Esparza-Diaz. In the Record of Sworn Statement completed on that day, the ICE Agent described the matter as "In the case of: Reentry Prosecution 8 USC 1326 or 1325," in other words, a criminal

30

illegal reentry prosecution. Esparza-Diaz was indicted on June 16, 2009.

Before the District Court, Esparza-Diaz requested a variance on the grounds that he should be given credit for the time he spent in ICE custody from February 24 to June 16, 2009 because he was in "official detention" pending an illegal reentry prosecution. The District Court declined to formally grant the variance, finding that the Record of Sworn Statement did not make certain that Esparza-Diaz would be prosecuted for illegal reentry. The District Court noted that while the individual ICE Agent's intent may have been clear, any criminal prosecution would have to be approved by the United States Attorney's Office. Although the District Court did not grant the request, it did state that it was "not going to give him the maximum under the guideline top of the range" and that "defense counsel's arguments do have some merit, particularly the fact that he's been in custody for months before this prosecution began." (App. of Appellant Pedro Esparza-Diaz at 86.)

The District Court's finding that Esparza-Diaz was not in "official detention" during this time period was not clearly erroneous. Aside from the ICE Agent's statement, there is no record from the government to indicate that a definitive decision regarding criminal prosecution was made. Because the record does not leave us with a "definite and firm conviction that a mistake has been committed," *Starnes*, 583 F.3d at 215, there is no clear error. Moreover, the record reflects that the District Court did give some consideration to Esparza-Diaz's argument because it sentenced him at the bottom of the Guidelines range. The District Court correctly

31

calculated a Guidelines range of fifty-seven to seventy-one months' imprisonment, and did not commit procedural error.

Like Lopez, Esparza-Diaz contends that his sentence is substantively unreasonable because it violates the provision in 18 U.S.C. § 3553(a) instructing courts to impose a sentence sufficient but not greater than necessary. At sentencing, the District Court expressed the concern that a below-Guidelines sentence would not be sufficient punishment after evaluating the specific characteristics of Esparza-Diaz. Significantly, the District Court noted that it had "the authority under the law to vary downward because of [the fast-track disparity], but I choose not to because of his criminal record and history." (App. of Appellant Pedro Esparza-Diaz at 85.) Thus, the District Court exercised its discretion to impose a sentence it believed was "sufficient, but not greater than necessary." 18 U.S.C. § 3553(a). Because "the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)," *Grier*, 475 F.3d at 571, we determine that Esparza-Diaz's sentence was reasonable.[12]

### 3. Pedro Arrelucea-Zamudio & Silvestre Brito-Hernandez[13]

Both Arrelucea-Zamudio and Brito-Hernandez maintain that their sentences are substantively unreasonable

---

[12] *See also supra* n.11.

[13] Arrelucea-Zamudio and Brito-Hernandez do not challenge the procedural reasonableness of their sentences.

because the District Court relied on the sixteen-level enhancement to the offense level set forth at U.S.S.G. § 2L1.2(b)(1)(A) in calculating their Guidelines ranges.[14] Specifically, they claim that § 2L1.2(b)(1)(A) was enacted with no apparent justification and results in Guidelines ranges that are disproportionate to the seriousness of the offense of illegal reentry. Thus, they assert, the District Court abused its discretion in relying on it.

We addressed a similar argument in *United States v. Lopez-Reyes*, 589 F.3d 667 (3d Cir. 2009). In that case, Lopez-Reyes pled guilty to illegal reentry after previously being convicted of a crime of violence. After the district

---

[14] U.S.S.G. § 2L1.2 states, in relevant part:
(a) Base Offense Level: 8
(b) Specific Offense Characteristic
  (1) Apply the Greatest:
  If the defendant was previously deported, or unlawfully remained in the United States, after –
  (A) a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) a crime of violence; (iii) a firearms offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense, increase by 16 levels[.]

court calculated his offense level pursuant to § 2L1.2(b)(1)(A), it imposed a within-Guidelines range sentence. On appeal, Lopes-Reyes argued, *inter alia*, that the sixteen-level enhancement in § 2L1.2(b)(1)(A) is unreasonable and that the district court failed to independently analyze the potential problems with the Guideline. In determining that the district court did not abuse its discretion in applying § 2L1.2(b)(1)(A), we reiterated that "*Kimbrough* does not require a district court to reject a particular Guidelines range where the court does not, in fact, have a disagreement with the Guideline at issue." *Id.* at 671. After concluding that the district court engaged in an appropriate exercise of discretion with regard to the § 3553(a) factors, we emphasized that "[t]he applicable Guidelines range here is not rendered unreasonable simply because § 2L1.2 establishes a base offense level for a nonviolent offense that is equal or greater than that of certain violent offenses. Congress 'has the power to define a crime and set its punishments.'" *Id.* (quoting *United States v. MacEwan*, 445 F.3d 237, 252 (3d Cir. 2006)).

The reasoning of *Lopez-Reyes* applies with equal force here. Both District Courts were aware of their authority to disregard § 2L1.2(b)(1)(A) on policy grounds after *Kimbrough*. (App. of Appellant Pedro Arrelucea-Zamudio at 183; App. of Appellant Silvestre Brito-Hernandez at 143-44.) But, neither District Court disagreed with the Guideline and declined to exercise discretion on that basis. Because the District Courts were not required to disregard § 2L1.2(b)(1)(A) when they did not disagree with it, *see Lopez-Reyes*, 589 F.3d at 671, our inquiry is limited to

34

whether the sentences imposed "fall[] within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors." *United States v. Wise*, 515 F.3d 207, 218 (3d Cir. 2008).

With respect to Arrelucea-Zamudio, the District Court thoroughly considered the § 3553(a) factors. The District Court remarked on Arrelucea-Zamudio's history of drug convictions, the need for deterrence, and the goal of avoiding unwarranted sentencing disparities. In doing so, it specifically reflected on the individual characteristics of Arrelucea-Zamudio, and reached a decision that "was premised upon appropriate and judicious consideration of the relevant factors." *Lessner*, 498 F.3d at 204 (internal quotation marks omitted). We determine that the District Court imposed a reasonable sentence of forty-six months' imprisonment.

As to Brito-Hernandez, the District Court likewise did not abuse its discretion. The record reflects that the District Court considered the seriousness of the offense and the need to promote deterrence, in light of the fact that Brito-Hernandez had illegally reentered the United States on several occasions and accumulated multiple drug convictions. Because "the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)," *Tomko*, 562 F.3d at 567, we determine that a sentence of forty-six months' imprisonment was reasonable.

35

## IV.

We hold that the current structure of the fast-track program is rationally related to, among others, the goals of allocating prosecutorial resources and enforcing the immigration laws.  Further, we determine that the sentences Appellants received after pleading guilty to illegal reentry were reasonable.  For the foregoing reasons, we will affirm the judgments of sentence entered by each District Court.