NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 11-2491

_____

UNITED STATES OF AMERICA

v.

JUAN MENDEZ-RAMIREZ,
*Appellant*

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-10-cr-0592-001)
District Judge:  Honorable Anne E. Thompson

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on February 7, 2012

Before: SLOVITER and VANASKIE, *Circuit Judges*, and PADOVA,
*Senior District Judge**

(Filed: February 14, 2012 )

_____

OPINION OF THE COURT

_____

PADOVA, *Senior District Judge*.

_____

*The Honorable John R. Padova, Senior District Judge of the United States District Court
for the Eastern District of Pennsylvania, sitting by designation.

Appellant Juan Mendez-Ramirez challenges both the procedural and substantive reasonableness of his 48-month sentence after pleading guilty to one count of reentry after deportation in violation of 8 U.S.C. § 1326(a) & (b)(2). We will affirm.

I.

As we write primarily for the parties, who are familiar with the factual context and legal history of this case, we will set forth only select background facts. Mendez-Ramirez was born in Guatemala in 1959 and first came to the United States in 1989. Mendez-Ramirez was convicted of driving while intoxicated in 1990 and was twice convicted of transport or distributing narcotics in 1991. He was deported for the first time on October 21, 1991. Mendez-Ramirez returned to the United States and was convicted of distribution of narcotics in 1994. He was deported from the United States on three additional occasions after his 1994 conviction: April 20, 1995, April 9, 1997 and July 24, 2008. He illegally returned to the United States again later in 2008. Mendez-Ramirez was homeless at times after his 2008 return to the United States and frequently stayed at the New Jersey Rescue Mission in Trenton, New Jersey.

Mendez-Ramirez was arrested three times in Trenton between February 28 and July 4, 2010. On February 28, 2010, he was arrested for defiant trespassing and begging or panhandling around the Trenton Transit Center. On April 8, 2010, he was arrested for resisting arrest, aggravated assault, unlawful possession of a weapon and assault on police. On July 4, 2010, he was arrested for receiving stolen property, resisting arrest and burglary.

On July 10, 2010, while Mendez-Ramirez was being held at the Mercer County Jail in Trenton, New Jersey following his July 4 arrest, Immigration and Customs Enforcement agents discovered that he was in the United States illegally after having been previously deported to Guatemala. On September 9, 2010, Mendez-Ramirez was charged in a federal indictment with one count of entering the United States after having been removed subsequent to the commission of an aggravated felony in violation of 8 U.S.C. § 1326(a) & (b)(2). He pled guilty to that charge on February 14, 2011.

The District Court sentenced Mendez-Ramirez on May 24, 2011. Prior to the sentencing, defense counsel sent the District Court a lengthy sentencing letter. Defense counsel did not contest the Probation Officer's calculation of Mendez-Ramirez's total offense level of 21, his criminal history category of III, or the advisory Guidelines sentencing range of 46-57 months. Defense counsel also did not file a motion for departure from that sentencing range. Defense counsel did, however, ask the District Court to vary downward from the advisory Guidelines sentencing range on the grounds that the Guideline for reentry after deportation, U.S.S.G. § 2L1.2, is devoid of rational, reliable, empirical, historical basis and, as a result, overstates the seriousness of the offense and results in sentencing ranges that are disproportionate to the offense.[1] Defense counsel also argued that, since Mendez-

_____

[1] Defense counsel specifically challenged the special offense characteristic contained in U.S.S.G. § 2L1.2(b)(1)(A), which increases a defendant's base offense level for reentry after deportation by 16 levels if the defendant reentered the United States after having been convicted of a drug trafficking offense for which he received a sentence of more than 13 months of imprisonment. U.S.S.G. § 2L1.2(b)(1)(A)(i).

3

Ramirez would qualify for fast-track disposition in a fast-track district, the District Court should vary downward from the advisory Guidelines range to account for the sentencing disparity between fast-track and non-fast-track districts.[2] Defense counsel repeated these arguments at length during the sentencing hearing and asked the District Court to impose a 24-month sentence. The District Court rejected defense counsel's argument and found that Mendez-Ramirez's Guideline range was fair, based on how many times he returned to the United States after being deported and his history of criminal activity. The District Court sentenced Mendez-Ramirez to 48 months of imprisonment. This sentence fell at the low end of the advisory Guidelines sentencing range calculated by the District Court.

Mendez-Ramirez contends that the District Court procedurally erred at sentencing by failing to explain its rejection of his argument that the Guideline for reentry after deportation is flawed. He also contends that his sentence is substantively unreasonable.

II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We apply the abuse of discretion standard to both Mendez-Ramirez's claim of procedural error and his challenge to the substantive reasonableness of his sentence. *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009) (en banc) (citations omitted).

---

[2]A district court located in a fast-track district may depart downward four levels from the Guideline range for reentry after deportation if the defendant agrees to plead guilty almost immediately after his or her arrest. *See* U.S.S.G. § 5K3.1. The District of New Jersey is not a fast-track district. *See United States v. Lopez*, 650 F.3d 952, 957 (3d Cir. 2011).

4

III.

A.

Mendez-Ramirez argues that the District Court procedurally erred by failing to give meaningful consideration to all aspects of his argument that the Guideline for reentry after deportation is flawed. *See Rita v. United States*, 551 U.S. 338, 356-57 (2007) (noting that "when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation," however, when a defendant "presents nonfrivolous reasons for imposing a different sentence . . . the judge will normally go further and explain why he has rejected those arguments"). We have previously made it clear that a district court is not required "to reject a particular Guidelines range where that court does not, in fact, have disagreement with the Guideline at issue." *United States v. Lopez-Reyes*, 589 F.3d 667, 671 (3d Cir. 2009) (citing *United States v. Arrelucea-Zamudio*, 581 F.3d 142, 148-49 (3d Cir. 2009), and *United States v. Gunter*, 462 F.3d 237, 249 (3d Cir. 2006)). Moreover, the District Court is not "required to engage in 'independent analysis' of the empirical justifications and deliberative undertakings that led to a particular Guideline." *Id.* (citing *United States v. Aguilar-Huerta*, 576 F.3d 365, 368 (7th Cir. 2009), and *United States v. Duarte*, 569 F.3d 528, 530 (5th Cir. 2009)). *See also Aguilar-Huerta*, 576 F.3d at 367-68 ("[W]e do not think a judge is *required* to consider . . . an argument that a guideline is unworthy of application in *any* case because it was promulgated without adequate deliberation. He should not have to delve into the history of a guideline so that he can satisfy

5

himself that the process that produced it was adequate to produce a good guideline. For if he is required to do that, sentencing hearings will become unmanageable, as the focus shifts from the defendant's conduct to the 'legislative' history of the guidelines." (citing *United States v. Huffstatler*, No. 08-2622, 2009 WL 1855161, at *3 (7th Cir. 2009); *United States v. O'Connor*, 567 F.3d 395, 398 (8th Cir. 2009); and *United States v. Mondragon-Santiago*, 564 F.3d 357, 366-67 (5th Cir. 2009))).

In this case, while the District Court did not engage in an on-the-record analysis of the history of the Guideline, it did explain why the Guideline was appropriate in this case. The District Court evaluated the nature and circumstances of Mendez-Ramirez's offense as well as his history and characteristics in reaching the conclusion that a sentence within the Guideline range would be appropriate for him:

> I have reviewed the presentence report very carefully. The guideline range for this defendant, based on the calculation which Probation engaged in, is 46 to 57 months in custody.
>
> I think that that calculation is fair. I appreciate [that defense counsel] disagrees, and thinks that the enhancement is greater than necessary. But when you consider how often Mr. Ramirez came back after being deported, when you consider his inability to live a life free of crime, an organized life. Now, I appreciate that his language skill is limited, he doesn't speak the kind of English that would make it easy for him to get a job, he went as far as second grade, he's from Guatemala, he's not had a steady marital or family life, he's got children, but in different households. It's just unfortunate. He was shot, suffered from a serious jaw injury. In many ways, Mr. Ramirez is a person one would feel sorry for.
>
> But he has not taken the opportunities to separate himself from

6

a life of crime, and I can't give him the kind of sentence that [defense counsel] asks for because he did not comply with the deportations that took place. He was not supposed to come back; he did, more than once.

So, I think the guideline sentence is appropriate.

(App. at 18.) Since the District Court concluded, after considering Mendez-Ramirez's argument, that the sentencing range that resulted from the application of U.S.S.G. § 2L1.2 was appropriate to Mendez-Ramirez's specific circumstances, it was not required to analyze the "empirical justifications and deliberative undertakings" undergirding that Guideline. *Lopez-Reyes*, 589 F.3d at 671. We conclude, accordingly, that the District Court's failure to explain why it rejected Mendez-Ramirez's argument regarding the supposed flaws in the Guideline for reentry after deportation does not constitute procedural error.

## B.

Mendez-Ramirez also argues that his sentence is substantively unreasonable because it was infected by the District Court's procedural errors. We "'review the substantive reasonableness of the sentence under an abuse-of-discretion standard, regardless of whether it falls within the Guidelines range.'" *United States v. Sevilla*, 541 F.3d 226, 230 (3d Cir. 2008) (quoting *United States v. Wise*, 515 F.3d 207, 218 (3d Cir. 2008), and citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). Ultimately, "[t]o determine whether a sentence is reasonable, the court must examine 'whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a).'" *United States v. Goff*, 501 F.3d 250, 254 (3d Cir. 2007) (quoting *United States v. Grier*, 475 F.3d 556, 571

7

(3d Cir. 2007) (en banc)) (additional citation omitted). Furthermore, "absent any significant procedural error, we must 'give due deference to the district court's determination that the § 3553(a) factors, on a whole,' justify the sentence." *Tomko*, 562 F.3d at 568 (quoting <u>Gall</u>, 552 U.S. at 51, and citing *United States v. Bungar*, 478 F.3d 540, 543 (3d Cir. 2007)). "In other words, if the district court's sentence is procedurally sound, we will affirm it unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Id.*

We have determined that the District Court did not make any procedural error in deciding that the Guideline for reentry after deportation was appropriate in this case. The District Court sentenced Mendez-Ramirez near the bottom of the advisory Guideline sentencing range calculated based on that Guideline. *See Gall*, 552 U.S. at 51 ("If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness." (citing *Rita*, 551 U.S. at 347)). The record further reflects that the District Court considered the § 3553(a) factors in determining Mendez-Ramirez's sentence and specifically addressed on the record the nature and circumstances of Mendez-Ramirez's offense, his history and characteristics, and the need for specific deterrence. In addition, the record demonstrates that the District Court was aware that, at the time of his sentencing, Mendez-Ramirez faced state charges for serious crimes, including aggravated assault, unlawful possession of a weapon, assault on a police officer, and burglary. We conclude that the "record as a whole reflects rational and meaningful consideration of the

factors enumerated in 18 U.S.C. § 3553(a)." *Tomko*, 562 F.3d at 568 (internal quotation and citations omitted). Moreover, based upon this record, we cannot say that "no reasonable sentencing court would have imposed the same sentence on [Mendez-Ramirez] for the reasons the district court provided." *Id.*

IV.

For the foregoing reasons, we will affirm the judgment of the District Court.